IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KLAUS NJI, | ) |
| *Plaintiff*, | ) |
| | ) No. 25-cv-324 |
| v. | ) |
| | ) Amount Demanded: $5.250,000+ |
| SMARTSHEET, INC | ) |
| | ) Jury Trial Demanded |
| *Defendant*. | ) |

## **COMPLAINT**

Plaintiff, Klaus Nji ("Mr. Nji" or "Plaintiff"), complains of Defendant Smartsheet, Inc ("Smartsheet"); and seeks appropriate judicial relief, stating as follows:

### **Jurisdiction**

1. Plaintiff asserts a claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. 2601 § et. seq, 29 U.S.C. § 1140, et seq. ("ERISA"), 42 U.S.C. § 1981 and a state law claim for fraudulent misrepresentation.

2. Since Plaintiff asserts federal claims, the Court has jurisdiction pursuant to 28 U.S.C § 1331.  The Court has subject matter jurisdiction over the non-federal claim pursuant to 28 U.S.C. § 1332(a)(2); and/or, alternatively, supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

1

3. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this district and division.

## BACKGROUND FACTS

4. Smartsheet Inc., founded in 2005 and headquartered in Washington state, is a publicly traded technology company which provides to its customers a cloud-based platform for the execution of work. It is a citizen of Washington state.

5. Plaintiff, who is black, holds B.A.SC and M.A.Sc. degrees in Electronic Systems Engineering and Computer Science. He has also completed several leadership courses including Havard Online Leadership Training and The PowerMBA. He is a United States permanent resident who lives in Texas, but a citizen of Canada.

6. On or about April 29, 2022, Mr. Nji accepted an offer from Smartsheet while he was still employed as a Senior Software Engineering Manager at Virtana where he managed 2 teams of 10 engineers, for the position of Manager, Engineering to begin employment on or about June 27, 2022 and manage a team of 5 employees. In accepting the Smartsheet offer, Mr. Nji withdrew his consideration for a more lucrative offer from Google to be a Software Engineering Manager after Smartsheet made certain representations to him, which eventually turned out to be false.

7. Mr. Nji had expected to work at Smartsheet for at least six (6) years.

8. In his role at Smartsheet, Mr. Nji was entitled to an annual salary of $200,000

per year, restricted stock units with a target value of $700,000, a bonus target of 15% of base salary and fringe benefits, including participation in a retirement plan. Twenty five (25) percent of Mr. Nji's restricted stock units were scheduled to vest on or about June 15, 2023.

9. Mr. Nji met all requirements of his role, and, on or about March 2023, was paid 100% of his targeted performance bonus, which Smartsheet represented as his "Individual Factor Payment", making it clear that he met Smartsheet's performance expectations. Due to his strong performance, Mr. Nji's manager assigned four additional employees to his team such that he ended up managing a team of 9 employees.

10. During Mr. Nji's employment at Smartsheet, he made significant contributions to the Company's success, including the following, for which he was paid the bonus:

   a. Built a vibrant, inclusive, trusting and high performant team culture comprising of 9 Software Engineers, 2 Designers and 1 Project Manager;

   b. Greatly improved stakeholder visibility by instituting tooling and processes for rapid adoption of the Agile framework;

c. Improved engineering excellence and SaaS operational practices via knowledge democratization and effective usage of Confluence, resulting in ten (10) times more documented engineering artifacts;

d. Mentored and promoted several engineers to their next career level and instituted an internship program;

e. Forged strong alliances across teams to establish a cross-pillar collaborative culture;

f. Increased the company's bottom line by championing an engineering effort that secured a 10-million-dollar deal with Amazon;

g. Increased product offering and stability by rejuvenating several high-impacting engineering projects and led the resolution of 5 long standing bugs in a product, thus improving upon key customer relationships; and

h. Increased product stability and scale over two (2) times by leading the delivery of key product features including API rate limits and several infrastructural enhances to improve product stability.

11. On or about March 27, 2023, less than three months before Mr. Nji's restricted stock units were to vest, Smartsheet, through Ms. Gavriella Gold ("Ms. Gold") and Mr. Ivo Yueh ("Mr. Yueh") abruptly terminated Mr. Nji's employment after he challenged their unlawful and brutal suggestions of performance management that

were certain to result in the unfair and unlawful termination of Mr. Tanner Mjelde ("Mr. Mjelde"), a direct report who had requested and had been approved for a paternity leave and had lost his previous manager due to death from COVID a few months prior.

12. Although Mr. Yueh and Ms. Gold claimed that Mr. Nji had failed to manage the performance of his team, this reason was pretextual because Mr. Nji had not in fact, failed to manage the performance of his team. Specifically, Mr. Mjelde's performance had improved significantly since February 2023 and Mr. Nji saw no reason or justification to continue to subject Mr. Mjelde through the same unlawful and brutal performance management processes that were being requested and that would have certainly but unfairly resulted in his termination. Additionally, Mr. Nji was not afforded a performance improvement plan or other terms that were available to other similarly situated employees.

13. At the time of his separation from Smartsheet, Mr. Nji was an Engineering Manager with 23 years of industry experience, including more than 10 years of experience in technical and people leadership.

## COUNT ONE
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

14. Plaintiff re-alleges and re-asserts paragraphs 1-13 as if fully set forth herein.

15. At all times relevant hereto, Plaintiff was an employee and Defendant an employer within the definition pursuant to the Family and Medical Leave ACT

("FMLA" or "ACT"), 29 U.S.C. §2601, et seq.

16. The FMLA prohibits any employer "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a).

17. Section 105 of the FMLA and section 825.220 of the FMLA regulations prohibits using an employee's request for or use of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions.

18. At relevant times, Mr. Nji engaged in protected activity when he challenged Mr. Yueh and Ms. Gold's request to place Mr. Mjelde on a performance improvement plan, or continuously subject him to the unlawful and brutal performance improvement practices that would have certainly but unfairly resulted in his termination after he had been approved for a paternity leave.

19. After Mr. Nji challenged Mr. Yueh and Ms. Gold's requests to subject Mr. Mjelde to the brutal and unlawful performance management practices, Mr. Yueh and Ms. Gold abruptly terminated Mr. Nji's employment, without affording him remedial opportunities that were offered to other similarly situated employees.

20. The termination was a materially adverse employment action and constituted a violation of the FMLA.

21. Upon information and belief, Mr. Nji's employment would not have been terminated if he had followed through with Mr. Yueh and Ms. Gold's demands.

22. As a direct and/or proximate result of Defendant's violations of the FMLA, Plaintiff has suffered damages, including lost wages, emotional distress, retirement benefits and valuable stock units.

**WHEREFORE**, Plaintiff prays that this court enter judgment on his behalf and against Defendant for actual, compensatory, punitive and consequential damages in excess of $5,250,000.

## COUNT TWO
## FMLA RETALIATION

23. Plaintiff re-alleges and re-asserts paragraphs 1-13 as if fully set forth herein.

24. At all times relevant hereto, Plaintiff was an employee and Defendant an employer within the definition pursuant to the Family and Medical Leave ACT ("FMLA" or "ACT"), 29 U.S.C. §2601, et seq.

25. At all times relevant hereto, Plaintiff was protected under the FMLA because he engaged in protected activity when he resisted Mr. Yueh and Ms. Gold's pressure to place Mr. Mjelde on a performance improvement plan, or continuously subject him to the unlawful and brutal performance improvement practices that would have certainly but unfairly and unlawfully resulted in his termination after he had been approved for a paternity leave.

26. Mr. Nji suffered an adverse employment action when Mr. Yueh and Ms. Gold abruptly terminated his employment, without affording him remedial opportunities that were offered to other similarly situated employees.

7

27. Mr. Nji was treated less favorably than other employees who, upon information and belief, had not engaged in FMLA protected activities.

28. The decision to terminate Mr. Nji's employment was made in part because he sought protection under the FMLA when he resisted Mr. Yueh and Ms. Gold's pressure to place Mr. Mjelde on a performance improvement plan, a disciplinary action that would have certainly but unfairly and unlawfully resulted in the termination of his employment after he had been approved for a paternity leave.

29. As a direct and/or proximate result of Defendant's violations of the FMLA, Plaintiff has suffered damages, including lost wages, emotional distress, retirement benefits and valuable stock units.

**WHEREFORE**, Plaintiff prays that this court enter judgment on his behalf and against Defendant for actual, compensatory, punitive and consequential damages in excess of $5,250,000.

## COUNT THREE
## VIOLATION OF 42 U.S.C. § 1981

30. Plaintiff re-alleges and re-asserts paragraphs 1-13 as if fully set forth herein.

31. At all times relevant hereto, Plaintiff was an employee and Defendant an employer.

32. At all relevant times, 42 U.S.C. § 1981 ("Section 1981") provided in part that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give

evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

33. At all relevant times, 42 U.S.C. § 1981 provided that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

34. At relevant times, Defendant, through its employees and agents, including but not limited to Mr. Yueh and Ms. Gold, intentionally discriminated against Mr. Nji by denying him the same terms and conditions of employment available to employees who were not black.

35. Mr. Nji was subjected to unequal, discriminatory treatment and harassment because of his race, black.

36. Defendant treated other similarly situated Caucasian or non-black employees more favorably than Plaintiff.

37. Defendant's conduct interfered with the terms and conditions of Plaintiff's employment. The conduct was severe, unwelcome and pervasive.

38. Defendant's unlawful and discriminatory conduct in violation of Section 1981 was outrageous, reckless and malicious, was intended to injure Plaintiff, and was

done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

39. Defendant's actions in engaging in and permitting race based discrimination against Plaintiff caused him to suffer emotional distress, humiliation, anxiety, pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, loss of enjoyment of life, and other compensatory and consequential damages.

**WHEREFORE**, Plaintiff prays that this court enter judgment on his behalf and against Defendant, providing:

A. Defendant has discriminated against Plaintiff in violation of 42 U.S.C. § 1981;

B. All wages and benefits Plaintiff would have received but for the unlawful employment practices;

C. Reinstatement to his former position, or in lieu of reinstatement, an order of front pay and benefits for a reasonable period of time;

D. Compensatory and punitive damages;

E. Attorney's fees and costs;

F. Pre-judgment interest;

G. Post-judgment interest; and

H. Such other and further relief as the Court deems just.

## COUNT FOUR
## FRAUDULENT MISREPRESENTATION

40. Plaintiff re-alleges and re-asserts paragraphs 1-13 as if fully set forth herein.

41. On or about April 29, 2022 when Smartsheet made its offer to Plaintiff, and in the course of Plaintiff's employment, Smartsheet represented to Plaintiff, through its policies and Employee Handbook, that it had a practice of subjecting all employees, including those similarly-situated as Plaintiff to the same terms of employment, as it concerned performance evaluation, discipline and termination.

42. Smartsheet's representations were material to the relationship between itself and Plaintiff, and they were false.

43. Smartsheet knew that its representations were false when it made them to Plaintiff, or made them recklessly without any knowledge of their truth and as positive assertions because it had subjected other employees to terms that were different from those it placed on its policies and Employee Handbook.

44. Smartsheet's conduct was wanton, willful and reckless as to entitle Plaintiff to punitive damages.

45. Smartsheet made the representations to Plaintiff with the intention that they should be acted upon. Specifically, Smartsheet made the representations so that Plaintiff could abandon his pursuit of other job opportunities, accept Smartsheet's offer of employment or continue working for Smartsheet.

46. Plaintiff justifiably relied upon Smartsheet's representations, abandoned his

other potential job opportunities, accepted Smartsheet's job offer and/or continued working for Smartsheet.

47. The representations were false because Smartsheet did not subject Plaintiff to the same terms of employment, as it concerned performance evaluation, discipline and termination as it did other similarly situated employees.

48. As a direct and/or proximate result of Smartsheet's fraudulent misrepresentation, Plaintiff suffered damages including but not limited to loss of a potential lucrative opportunity to work for Google and other prominent technology firms, loss of salary and benefits from his Smartsheet job, expenses related to job search, emotional distress and pain and suffering.

WHEREFORE, Plaintiff, Klaus Nji, respectfully requests that, after a jury trial, this Court:

A. Find in his favor and enter judgment against Defendant, Smartsheet, Inc, for fraudulent misrepresentation and award him actual, compensatory and punitive damages, and to grant him further appropriate relief.

## COUNT FIVE
## VIOLATION OF ERISA

49. Plaintiff re-alleges and re-asserts paragraphs 1-13, 41-47 as if fully set forth herein.

50. At relevant times Smartsheet had in place an employee stock purchase plan commonly known as 2018 Employee Stock Purchase Plan ("Plan") whose purpose

was to provide eligible employees and Participating Corporations with a means of acquiring an equity interest in Smartsheet through payroll deductions, to enhance such employees' sense of participation in the affairs of Smartsheet, and to provide an incentive for continued employment.

51. Plaintiff was an eligible employee, who, at relevant times, was awarded restricted stock units with a target value of $700,000 under the Plan. The Plan was subject to ERISA at all relevant times.

52. Smartsheet violated Plaintiff's rights under Section 510 of ERISA when it intentionally terminated his employment abruptly right before his restricted stock units could vest without following its own policies and thus subjecting Plaintiff to different terms of employment.

53. As a direct and/or proximate result of Smartsheet's conduct as alleged above, Plaintiff has suffered and will continue to suffer substantial damages of a personal and pecuniary nature, including but not limited lost wages and other compensation and benefits.

54. In addition to monetary damages, Plaintiff is entitled to attorneys' fees, costs and expenses in this lawsuit pursuant to 29 U.S.C. § 1132.

WHEREFORE, Plaintiff, Klaus Nji, respectfully requests that, after a jury trial, this Court:

A. Find in his favor and enter judgment against Defendant, Smartsheet, Inc, for damages caused by Smartsheet's violation of 29 U.S.C. § 1104 and other provisions of ERISA, plus reasonable attorneys' fees and costs of this action, and to grant him further appropriate relief.

## JURY DEMAND

55. Plaintiff hereby demands a trial by jury of twelve pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all triable issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Klaus Nji, respectfully prays that this Honorable Court enter judgment on his behalf and against Defendant Smartsheet, Inc as follows:

A. That Plaintiff be awarded damages for lost salary and wages;

B. That Plaintiff be awarded damages for lost benefits including valuable Company stock entitlements;

C. That Plaintiff be awarded punitive damages;

D. That Plaintiff be awarded liquidated damages because of Defendant's reckless and willful disregard of Plaintiff's protected rights;

E. That Plaintiff be awarded Attorney's fees and costs; and

F. That Plaintiff be awarded any and all appropriate relief under the circumstances.

Respectfully Submitted

/s/ Eric Onyango

Eric Onyango
Prime Legal, LLC
222 North Columbus Drive Suite 1507
Chicago, IL 60601
Lead Counsel for Plaintiff

Claudine Umuhire Gasana
Law Office of Claudine U. Gasana, PLLC
2100 West Loop South
Suite 800
Houston, TX 77027
Local Counsel for Plaintiff